COURT OF APPEALS
DECISION
DATED AND FILED

October 13, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

**This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.**

**A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals.** *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP2070-CR**

Cir. Ct. No. **2017CF834**

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT IV

STATE OF WISCONSIN,

  PLAINTIFF-RESPONDENT,

 V.

VANIN DELL MCKINNON,

  DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for La Crosse County: ELLIOTT M. LEVINE, Judge. *Affirmed*.

Before Blanchard, P.J., Kloppenburg, and Graham, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in** WIS. STAT. RULE 809.23(3).

¶1    PER CURIAM.  Vanin McKinnon appeals a judgment convicting him of repeated sexual assault of the same child and an order denying his postconviction motion for a new trial.  McKinnon argues that his trial counsel provided constitutionally ineffective assistance in three respects:  (1) failing during voir dire to ask follow-up questions of a prospective juror, who ultimately sat on the jury, after she said that she knew the prosecutor "as a family friend;" (2) failing to object to or move to strike the forensic interviewer's testimony that she believed what the child, A.B., told her;[1] and (3) failing to properly object to the testimony of A.B.'s grandmother that she had been convicted of child neglect for failing to protect A.B. from McKinnon's sexual assaults alleged in this case.  For the reasons set forth below, we conclude that McKinnon was not denied his right to the effective assistance of counsel.  We affirm.

**BACKGROUND**

¶2    The State charged McKinnon with repeated sexual assault of the same child between 2014 and 2017, when A.B. was between five and nine years old, and the case proceeded to a jury trial in September 2019.  During voir dire, a prospective juror said that she knew the prosecutor representing the State in this case "as a family friend."  In response to questioning by the circuit court, the prospective juror said that she could set aside the fact that she knows the prosecutor as a family friend and "listen to [the] evidence fairly."  She was empaneled on the jury.  The court asked counsel if there were "[a]ny concerns about the jury selection at all," and neither counsel indicated any concerns.

---

[1] To protect the identity of the child, we refer to her as "A.B."  *See* WIS. STAT. RULES 809.19(1)(g) and 809.86.  All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

¶3      During the course of the trial, forensic interviewer Jeanne Meyer testified regarding her interview of A.B. in August 2017, and portions of a video recording of that interview were played for the jury. After the video was played, McKinnon's trial counsel cross-examined Meyer with regard to how she conducted interviews. Meyer testified that her job "isn't to determine whether something's happened or not," and that as a forensic interviewer she is "neutral in that situation." Trial counsel then asked Meyer if she knew whether or not A.B. had experienced the sexual assaults she described, and Meyer testified, "A.B. told me she experienced those things, so, yes, I believe her." Trial counsel then asked, "Yes, you know she experienced them?" Meyer testified, "I believed what she told me." Trial counsel did not question Meyer further after that exchange.

¶4      A.B.'s grandmother also testified during the trial. She testified that A.B. lived with her since A.B. was three months old, and that she observed several incidents between McKinnon and A.B. that she considered to be inappropriate, including: McKinnon caressing A.B.'s shoulders and kissing her neck; McKinnon and A.B. being in their bedroom with A.B. naked and kneeling in front of McKinnon; and McKinnon caressing A.B.'s breast. On redirect examination by the prosecutor, A.B.'s grandmother testified that she was convicted of child neglect for failing to protect A.B. from sexual abuse, which the grandmother testified "[s]pecifically related to incidents that we are talking about" at the trial.

¶5      The other witnesses who testified at trial were the detective who investigated the allegations and interviewed McKinnon (and portions of a video recording of that interview were played for the jury), A.B., and McKinnon. McKinnon testified that he acknowledged in the interview with the detective that there were times when he touched A.B.'s vagina and butt, including once when she was in the bathtub; that the touching in the bathtub was a mistake; that he had

A.B. sit on his lap and rocked in the chair with her in his lap; that he had previously been confronted by A.B.'s mother about inappropriate touching of A.B. and ultimately moved out of their shared residence because "there had been one too many instances"; and that he did not recall ever touching or putting his mouth on A.B.'s nipples.

¶6     The jury found McKinnon guilty of repeated sexual assault of a child.

¶7     In February 2021, McKinnon filed a postconviction motion alleging ineffective assistance of counsel and seeking a new trial.  Specifically, McKinnon alleged that trial counsel was ineffective for:  (1) failing during voir dire to ask follow-up questions of the prospective juror in order "to develop the facts regarding [her] relationship with" the prosecutor; (2) failing to object to or move to strike Meyer's twice-repeated testimony that she believed what A.B. told her, on the grounds that the testimony was non-responsive and in violation of the *Haseltine* rule;[2] and (3) failing to properly object to the testimony of A.B.'s grandmother regarding her conviction for child neglect for failing to protect A.B. from McKinnon's sexual abuse.  In June 2021, the circuit court held an evidentiary *Machner*[3] hearing, at which the juror and trial counsel testified.  We present the details of their testimony as pertinent to our discussion below.

---

[2] *State v. Haseltine*, 120 Wis. 2d 92, 96, 352 N.W.2d 673 (1984) (stating that the credibility of a witness is for the jury to decide, and that "[n]o witness … should be permitted to give an opinion that another mentally and physically competent witness is telling the truth.").

[3] *State v. Machner*, 92 Wis. 2d 797, 804, 285 N.W.2d 905 (Ct. App. 1979) (when a defendant claims he or she received the ineffective assistance of trial counsel, a postconviction hearing "is a prerequisite … on appeal to preserve the testimony of trial counsel.").

¶8 In November 2021, the circuit court denied the motion. The court determined that trial counsel did not perform deficiently with respect to counsel's questioning of the prospective juror or counsel's failure to object to Meyer's testimony. The court also determined that McKinnon was not prejudiced by the grandmother's testimony about her conviction, given the other trial evidence, particularly the grandmother's observations and A.B.'s testimony. McKinnon appeals.

## DISCUSSION

¶9 McKinnon renews his claims of ineffective assistance of trial counsel on appeal.

¶10 Under both the Wisconsin and United States Constitutions, to prevail on an ineffective assistance of counsel claim, the defendant must show that counsel's actions or inaction constituted deficient performance and that, as a result of that deficient performance, the defendant was prejudiced. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *State v. Love*, 2005 WI 116, ¶30, 284 Wis. 2d 111, 700 N.W.2d 62; *State v. Thiel*, 2003 WI 111, ¶18, 264 Wis. 2d 571, 665 N.W.2d 305.

¶11 To prove deficient performance, "the defendant must establish that counsel's conduct [fell] below an objective standard of reasonableness." *Love*, 284 Wis. 2d 111, ¶30. The defendant must show that, under all of the circumstances, counsel's specific acts or omissions were "outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. To prove prejudice, the defendant must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been

different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

¶12 The defendant bears the burden of proving both of these elements. *State v. Roberson*, 2006 WI 80, ¶24, 292 Wis. 2d 280, 717 N.W.2d 111. If we conclude that the defendant has not proved one prong, we need not address the other. *Strickland*, 466 U.S. at 697; *State v. Nielsen*, 2001 WI App 138, ¶27, 246 Wis. 2d 648, 630 N.W.2d 752.

¶13 Whether counsel's actions were deficient or prejudicial is a mixed question of law and fact. *Strickland*, 466 U.S at 698. We will uphold the circuit court's findings of fact unless they are clearly erroneous. *State v. Thiel*, 2003 WI 111, ¶21, 264 Wis. 2d 71, 665 N.W.2d 305; *State v. Kimbrough*, 2001 WI App 138, ¶27, 246 Wis. 2d 648, 630 N.W.2d 752. "Findings of fact include 'the circumstances of the case and the counsel's conduct and strategy.'" *Thiel*, 264 Wis. 2d 571, ¶21 (citation omitted). Whether counsel's conduct violated the defendant's right to effective assistance of counsel is a legal determination, which this court decides de novo. *Kimbrough*, 246 Wis. 2d 648, ¶27.

### I. Failure to question prospective juror further

¶14 "The United States Constitution and Wisconsin's Constitution guarantee an accused an impartial jury." *State v. Lepsch*, 2017 WI 27, ¶21, 374 Wis. 2d 98, 892 N.W.2d 682 (internal quotation marks and quoted source omitted). "To be impartial, a juror must be indifferent and capable of basing his or her verdict upon the evidence developed at trial." *State v. Faucher*, 227 Wis. 2d 700, 715, 596 N.W.2d 770 (1999). There are three types of prospective juror bias: (1) statutory bias; (2) subjective bias; and (3) objective bias. *Faucher*, 227 Wis. 2d at 716.

¶15 McKinnon argues that trial counsel was ineffective by failing to ask follow-up questions about the nature of the relationship between the prospective juror and the prosecutor in order to determine whether their relationship was such that it rendered her objectively biased. "The concept of objective bias relates to the question of 'whether [a] reasonable person in the individual prospective juror's position could be impartial.'" *Lepsch*, 374 Wis. 2d 98, ¶24 (quoting *Faucher*, 227 Wis. 2d at 718). A juror "should be viewed as objectively biased if a reasonable person in the juror's position could not avoid basing his or her verdict upon considerations extraneous to evidence put before the jury at trial." *State v. Tody*, 2009 WI 31, ¶36, 316 Wis. 2d 689, 764 N.W.2d 737, *abrogated in part as stated in State v. Sellhausen*, 2012 WI 5, ¶73, 338 Wis. 2d 286, 809 N.W.2d 14 (Ziegler, J., concurring). Exclusion of a prospective juror for objective bias requires either: "(1) some direct or personal connection between the challenged juror and some important aspect of the particular case, or (2) a firmly held negative predisposition by the juror regarding the justice system that precludes the juror from fairly and impartially deciding the case." *State v. Jimmie R.R.*, 2000 WI App 5, ¶19, 232 Wis. 2d 138, 606 N.W.2d 196. Pertinent here, the question is whether the relationship with the prosecutor was "close enough to have biased a reasonable person" in the position of the prospective juror. *State v. Beck*, No. 2010AP872, unpublished slip op. at ¶28 (WI App Oct. 20, 2011).[4]

¶16 "Whether a juror is objectively biased is a mixed question of fact and law." *Faucher*, 227 Wis. 2d at 720. The circuit court's factual findings will be upheld unless they are clearly erroneous. *Id.* "Whether those facts fulfill the

---

[4] *See* WIS. STAT. RULE 809.23(3)(b) (permitting the citation of authored, unpublished opinions issued after July 1, 2009, for their persuasive value).

legal standard of objective bias is a question of law." *Id.* Because the circuit court's conclusion on objective bias is intertwined with its factual findings, "it is appropriate that [the appellate] court give weight to the circuit court's conclusion." *Id.*

¶17 "A failure to object or to further question a juror may be raised as a claim of ineffective assistance of counsel." *State v. Carter*, 2002 WI App 55, ¶14, 250 Wis. 2d 851, 641 N.W.2d 517. In the context of an ineffective assistance of counsel claim, the prejudice prong in a claim concerning juror bias presents as a question of whether counsel's performance resulted in the seating of a biased juror. *See State v. Koller*, 2001 WI App 253, ¶14, 248 Wis. 259, 635 N.W.2d 838 (stating that, when a defendant asserts trial counsel was ineffective for failing to sufficiently question a prospective juror, "[t]he prejudice issue here is whether [defendant's] counsel's performance resulted in the seating of a biased juror"). "[C]ounsel's failure to act to remove a biased juror who ultimately sat on the jury constitutes deficient performance resulting in prejudice" to the defendant. *Carter*, 250 Wis. 2d 851, ¶15.

¶18 To recap, during voir dire, the prospective juror said, "I know [the prosecutor] as a family friend." In response to questioning by the circuit court, she said, "I can set that aside and listen to evidence fairly."

¶19 We assume, without deciding, that it was deficient performance during voir dire for counsel to fail to question the prospective juror further about the nature of her relationship with the prosecutor to determine whether their relationship was such that it rendered her objectively biased. *See Beck*, ¶¶17-18 (WI App Oct. 20, 2011) (ruling that defense counsel was deficient in not probing more deeply into prospective juror's relationship with the district attorney, whom

she had known "for several years," and into her relationship with the assistant district attorney, whom she knew "on a social basis"). We turn to whether that deficient performance resulted in prejudice to McKinnon, that is, whether McKinnon has met his burden of showing that the juror was objectively biased. We first review the juror's testimony at the postconviction hearing along with the circuit court's ruling and then explain our conclusion that McKinnon fails to show that the juror was objectively biased.

¶20 At that hearing, the juror offered the following testimony.

¶21 She and the prosecutor both volunteered at a dog rescue program. She and the prosecutor had different roles and levels of involvement in the rescue organization, and were not "partners" in it. She saw the prosecutor only at public adoption events focused on dogs. She volunteered at adoption events for two hours each month for two to three years, always with a group of four or more people, never only with the prosecutor.

¶22 The juror had known the prosecutor for more than five years and considered the prosecutor "an acquaintance, someone I trust." They were not close and they did not talk to each other outside of the rescue work. She did not have personal conversations on the phone with the prosecutor and did not call the prosecutor to go to dinner. She did contact the prosecutor once before the trial in this case to ask some "process questions" regarding her then pending divorce. She respected attorneys and had the opportunity to assess the prosecutor's credibility before trial, but she "was told to put all feelings and relations aside, and I did." She had no discussions with the prosecutor about this case before the trial, and during trial they had no communications that were not on the record.

9

¶23    The circuit court rejected McKinnon's claim that counsel was ineffective in not further questioning the prospective juror during voir dire about her relationship with the prosecutor.  The court found that the "prosecutor was someone [whom the juror] worked with periodically, not someone she was closely tied with," and that the juror "didn't describe a relationship at a level showing objective bias."

¶24    We conclude that the juror's testimony at the *Machner* hearing, and the circuit court's factual findings based on that testimony, establish that her relationship with the prosecutor was "not close enough to have biased a reasonable person." *Beck*, No. 2010AP872, ¶28 (WI App Oct. 20, 2011) (concluding from a reading of the voir dire transcript that three jurors challenged by defendant were not objectively biased because their relationships with the district attorney were sufficiently distant such that a reasonable person in the position of each of the jurors would be able to remain fair and impartial).  The record supports the circuit court's findings that the juror and the prosecutor interacted only occasionally and did not have a close personal relationship.  As in *Beck*, the interactions between the two were sufficiently sporadic and their relationship was sufficiently distant that a reasonable person in the juror's position would be able to remain fair and impartial.  *See id.* at ¶28.  Because the juror was not objectively biased, trial counsel's failure during voir dire to question her further about her relationship with the prosecutor did not prejudice McKinnon.  Accordingly, McKinnon fails to show that trial counsel was constitutionally ineffective.

¶25    McKinnon argues that the juror was objectively biased because of her friendship with the prosecutor.  McKinnon characterizes that friendship as a "very substantial relationship" between two people who shared the same charitable goal, who "saw each other frequently over a lengthy period of time," and who

shared "significant social ties." This characterization exaggerates the record reviewed above, which shows that she saw the prosecutor only occasionally and as part of larger groups and did not see the prosecutor individually or socially; it is also inconsistent to a significant degree with the circuit court's findings that the two worked together only periodically and were *not* socially close.[5]

¶26 McKinnon also points to the juror's testimony that she considered the prosecutor to be fair and honest when she dealt with the prosecutor. McKinnon analogizes this situation to that in *Faucher*, in which our supreme court concluded that a prospective juror was objectively biased based on his statements that a witness was his former next-door neighbor, who he knew to be "a girl of integrity" who "wouldn't lie." *Faucher*, 227 Wis. 2d at 708, 735. However, the court in *Faucher* stressed that it was the juror's "strongly held beliefs" and "strongly held initial assurances" as to the witness's credibility, not their relationship as neighbors, which was the basis for its determination of objective bias. *Id.* The court noted that on three occasions the juror expressed the view that the witness's credibility was unimpeachable. *Id.* at 732-33. By contrast, McKinnon fails to show that the juror in this case possessed such "strongly held beliefs" or made such "strongly held" unequivocal assurances as to the prosecutor's credibility.

¶27 McKinnon also argues that, because the juror did not disclose a similar relationship with defense counsel, she "would have been more inclined to

---

[5] McKinnon supports his argument with a citation to *Montgomery v. Commonwealth*, 819 S.W.2d 713 (Ky. 1991). That case does not help McKinnon not only because it is a non-Wisconsin case that is not binding, but also because the language McKinnon cites presumes bias only when a sufficiently close relationship is established, *id.* at 717, which is not the case here.

side with" the prosecutor. However, when asked if she "would have been more inclined to respect [the prosecutor's position] than [a position held by] somebody else," the juror testified, "I respect all attorneys," and that "we were asked to put all feelings and relations aside, which I did." We conclude that, taking into account the juror's testimony as a whole, it was reasonable for the circuit court to conclude that a reasonable person in the juror's position could set aside her opinion and be impartial. *See Faucher*, 227 Wis. 2d at 718-19 (the emphasis of the assessment of whether a juror is objectively biased is "on the reasonable person in light of" the facts and circumstances surrounding the juror's statements).

¶28 In sum, McKinnon fails to provide a basis for us to disturb the circuit court's reasonable determination that the prospective juror was not objectively biased. *See Faucher*, 227 Wis. 2d 700 at 731-2, ¶56 (the appellate court will reverse the circuit court's conclusion that a prospective juror is not biased "only if as a matter of law a reasonable judge could not have reached such a conclusion."); *see also Lepsch*, 374 Wis. 2d 98, ¶37 (defendant failed to demonstrate he was prejudiced by counsel's deficient performance at voir dire when he failed to provide "sufficient reason to upset the circuit court's determination" that prospective jurors who sat on jury were not biased).

### II. Failure to object to Meyer's testimony that she believed A.B.

¶29 McKinnon argues that trial counsel rendered ineffective assistance by failing to object to or move to strike Meyer's twice-repeated testimony that she believed what A.B. told her, on the grounds that the testimony violated the *Haseltine* rule. We decide this issue based on a failure to show prejudice. *See Strickland*, 466 U.S. at 697 (stating that if the court concludes that the defendant has not proved one prong, it need not address the other).

¶30    In *State v. Krueger*, 2008 WI App 162, ¶¶9-13, 314 Wis. 2d 65, 762 N.W.2d 114, this court reviewed opinions addressing the admissibility of expert opinion in cases involving allegations of child sexual assault. We began with *State v. Haseltine*, 120 Wis. 2d 92, 352 N.W.2d 673 (Ct. App. 1984), in which this court concluded that "no expert should be permitted to give an opinion that another mentally and physically competent witness is telling the truth." *Krueger*, 314 Wis. 2d 65, ¶9 (citing *Haseltine*, 120 Wis. 2d at 96). Citing *Haseltine*, 120 Wis. 2d at 96, we stated, "An opinion that a complainant was sexually assaulted or is telling the truth is impermissible. The credibility of a witness is ordinarily something a lay juror can knowledgeably determine without the help of an expert opinion." *Krueger*, 314 Wis. 2d 65, ¶9.

¶31    We then cited *State v. Jensen*, 147 Wis. 2d 240, 432 N.W.2d 913 (1988), in which our supreme court similarly ruled that "'the expert witness must not be allowed to convey to the jury his or her own beliefs as to the veracity of the complainant with respect to the assault.'" *Krueger*, 314 Wis. 2d 605, ¶12 (quoting *Jensen*, 147 Wis. 2d at 256-57).

¶32    In *Krueger*, we addressed the defendant's claim that his trial counsel was constitutionally ineffective for failing to object to testimony by the social worker who conducted a forensic interview of the alleged child sexual assault victim. *Krueger*, 314 Wis. 2d 605, ¶¶1-3. After the jury viewed the videotaped interview and the child testified, the social worker was called as a witness and was asked about methods she used to determine whether the child was subject to coaching or suggestibility. *Id.* at ¶5. She was then asked whether she formed an opinion as to whether the child's incriminating statements were the product of any coaching or suggestibility. *Id.* The social worker testified that the child was not sophisticated enough to maintain a fabricated story and, therefore, could not have

13

consistently recounted the details of the alleged incident "unless it was something that she had experienced." *Id.* at ¶¶1, 5. We determined that "the social worker effectively offered expert opinion testimony that the child was telling the truth, which is impermissible under *State v. Haseltine*." *Id.* at ¶¶1, 19 ("*Haseltine* and *Jensen* make clear that opinion testimony as to a particular child may not cross the line by including a subjective determination as to the credibility of the complainant."). Accordingly, we concluded that it was deficient performance for trial counsel to fail to object to the testimony; we also concluded that, based on the facts of that case, the defendant was prejudiced by counsel's failure. *Id.* at ¶¶1, 17-18.

¶33 Here, as stated, after portions of a video recording of the forensic interview of A.B. were played for the jury, McKinnon's trial counsel cross-examined Meyer with regard to how she conducted interviews. Trial counsel then asked Meyer if she knew whether A.B. had experienced the sexual assaults she described, and Meyer testified, "A.B. told me she experienced those things, so, yes, I believe her." Trial counsel then asked, "Yes, you know she experienced them?" Meyer testified, "I believed what she told me."[6]

¶34 Assuming without deciding that Meyer "effectively offered expert opinion testimony that the child was telling the truth, which is impermissible under *State v. Haseltine*," *id.* at ¶¶1, 19, we conclude that counsel's failure to object to that testimony, based on the facts of this case, did not prejudice McKinnon. Unlike in *Krueger*, in which the child's account of the one sexual

---

[6] The parties do not identify, and we do not discern, any significance in Meyer's use of first the present tense ("believe") and then the past tense ("believed") in response to trial counsel's series of related questions.

14

assault was not corroborated by independent evidence, *id.* at ¶18, here A.B.'s grandmother testified that she witnessed several of the sexual assaults described by A.B. In the face of such eye-witness corroboration, we cannot conclude that without Meyer's testimony—that she believed what A.B. told her about the assaults that A.B.'s grandmother testified she witnessed—there is a reasonable probability that the result of the trial would have been different.

¶35 McKinnon argues that trial counsel's failure to object to this testimony was prejudicial because the testimony unfairly bolstered A.B.'s credibility. Specifically, the argument is that it raised the unreasonable risk that the jury would have believed that Meyer's training allowed her to determine, and that Meyer had access to information not presented at trial that showed, that A.B. was truthful and McKinnon was guilty. We observe that the risk identified by McKinnon is not great—Meyer's testimony that she believed what A.B. told her was conclusory in nature, Meyer specifically testified that her job "isn't to determine whether something's happened or not," and Meyer did not in any way allude to any special training or information not presented at trial that would give her special insight or ability to determine truthfulness. But in any event, this argument ignores the corroborating evidence, missing in *Krueger*, in the form of the grandmother's testimony that she witnessed certain of the sexual assaults that A.B. described.

¶36 In sum, McKinnon does not persuade us that, had Meyer's testimony that she believed what A.B. told her been excluded, there is a reasonable probability that the jury would have acquitted McKinnon.

### III. Failure to object to testimony about grandmother's conviction

¶37    McKinnon argues that trial counsel rendered ineffective assistance by failing to properly object to the testimony of A.B.'s grandmother regarding her conviction for child neglect for failing to protect A.B. from the sexual assaults alleged in this case. We also decide this issue on the prejudice prong. *See Strickland*, 466 U.S. at 697.

¶38    McKinnon argues that admission of this testimony "allowed the jury to infer [that the grandmother's] sentencing court had already concluded defendant McKinnon had in fact sexually assault[ed]" A.B. McKinnon argues that this inference was reinforced when the prosecutor referenced this testimony in closing argument. However, McKinnon acknowledges that this error, alone, is not sufficiently prejudicial to warrant a new trial. We agree. Had the evidence of the grandmother's conviction been excluded, we conclude that it is not reasonably probable that the jury would have acquitted McKinnon of committing the sexual assaults that A.B. described and that the grandmother testified she witnessed.

### IV. Cumulative Prejudice

¶39    McKinnon argues that, taken together, trial counsel's two errors—the *Haseltine* error and the erroneous admission of A.B.'s grandmother's conviction—are sufficiently unfairly prejudicial as to warrant a new trial.

¶40    In *State v. Thiel*, 264 Wis. 2d 571, ¶59, our supreme court directed that "prejudice should be assessed based on the cumulative effect of" trial counsel's errors even when "the specific errors, evaluated individually, do not satisfy the prejudice standard in *Strickland*." The court noted that, "in most cases errors, even unreasonable errors, will not have a cumulative impact sufficient to

16

undermine confidence in the outcome of the trial, especially if the evidence against the defendant remains compelling." *Id.* at ¶61. Our focus in the analysis is on "the totality of the circumstances at trial" and "the overall reliability of the trial." *Id.* at ¶62.

¶41 We conclude that McKinnon does not show that trial counsel's failure to object to Meyer's testimony that she believed what A.B. told her and the grandmother's testimony about her conviction undermines confidence in the outcome of the trial. McKinnon disregards the compelling evidence comprising A.B.'s testimony describing the details of the sexual assaults and the grandmother's testimony that she witnessed several of the assaults that A.B. described. Given this compelling evidence, McKinnon fails to show that, had Meyer's testimony that she believed what A.B. told her and the grandmother's testimony about her conviction been excluded, there is a reasonable probability that the result of the trial would have been different.

## CONCLUSION

¶42 For the reasons explained above, we affirm.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.